Argued and submitted November 16, reversed and remanded as to claims and counterclaims involving the validity of the lien created by the trust deed; otherwise affirmed December 15, 2010

Jeanne MEAMBER,
*Plaintiff-Appellant,*

*v.*

OREGON PACIFIC BANK, INC.,
an assumed business name of
Oregon Pacific Banking Co.,
a domestic business corporation,
*Defendant-Respondent.*

Lane County Circuit Court
160805035; A141395

244 P3d 901

Michael Vergamini argued the cause and filed the brief for appellant.

Mario D. Conte argued the cause for respondent. With him on the brief was Hershner Hunter, LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Defendant loaned plaintiff $51,500, secured by a trust deed to plaintiff's property. The loan agreement provided that defendant would release the trust deed "upon a payment of principal in the amount of $20,000.00." (Capitalization omitted.) Plaintiff made a number of payments on the loan, and, after those payments totaled more than $20,000 in principal, requested that defendant release the trust deed. Defendant, however, refused to release the trust deed because, although the aggregate of plaintiff's payments exceeded $20,000 in principal, plaintiff had not made "a" payment in the amount of $20,000—that is, defendant took the position that the loan agreement required a *single* payment in the amount of $20,000 before the trust deed would be released.

Plaintiff eventually filed this action to remove the cloud on title created by the trust deed, and defendant counterclaimed with an action on the note and to foreclose the lien created by the trust deed.[1] Defendant then moved for summary judgment on plaintiff's claim to clear title, arguing that the loan agreement unambiguously requires a single payment of $20,000, which plaintiff indisputably had not made. The trial court agreed with defendant's interpretation of the loan agreement and granted the motion. A stipulated facts trial on the counterclaims followed, after which the trial court entered judgment in favor of defendant, foreclosing on the lien created by the trust deed.[2]

Plaintiff now appeals that general judgment, arguing that the trial court erred in granting defendant's motion for summary judgment. She argues that the loan agreement is, at the very least, ambiguous as to whether it requires a *single* payment in the amount of $20,000 before the trust deed is released or, as occurred in this case, a *total* payment of $20,000. We agree with plaintiff that the loan agreement is subject to more than one reasonable interpretation on that point, and we therefore reverse and remand.

---

[1] Defendant also sought to foreclose on security interests in plaintiff's personal property. That aspect of the counterclaims is not at issue on appeal.

[2] The order granting summary judgment was entered by the Honorable Charles D. Carlson. The trial judge was the Honorable Gregory C. Foote.

■    As framed above, the issue on appeal is a narrow one: Whether the trial court erred in granting summary judgment based on its interpretation of the loan agreement. That, in turn, depends on whether the loan agreement—specifically, the collateral release provision of the agreement—is unambiguous. *Milne v. Milne Construction Co.*, 207 Or App 382, 388, 142 P3d 475, *rev den*, 342 Or 253 (2006) (a party is entitled to summary judgment regarding the meaning of a contract only if the terms of the contract are unambiguous). A term in a contract is ambiguous if, when examined in the context of the contract as a whole, including the circumstances in which the agreement was made, it is susceptible to more than one plausible interpretation. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006). Thus, in determining whether summary judgment was appropriate in this case, we first examine the text and context of the collateral release provision to determine whether there is more than one plausible interpretation of that provision.

    The collateral release provision of the loan agreement provides:

    "COLLATERAL RELEASE. OREGON PACIFIC BANKING COMPANY WILL RELEASE THE TRUST DEED ON REAL PROPERTY LOCATED AT 24419 SUTTLE RD, VENETA, OR 97487 UPON A PAYMENT OF PRINCIPAL IN THE AMOUNT OF $20,000.00."

In defendant's view, the plain text of the release provision—in particular, the article "a" that precedes "payment"—is unambiguous and, thus, ends the inquiry:

*"Webster's Third New International Dictionary* (unabridged ed 2002) states that the article 'a' is 'used as a function word before a singular noun followed by a restrictive clause or other identifying modifier,' and provides the example, 'a man who was here yesterday.'

    "The use of the article 'a' in the Release is in direct accord with the Webster's definition. 'A' is used as a function word before the singular noun 'payment,' followed by a restrictive modifier, 'in the amount of $20,000.00.' Consequently, the parties agreed that the Trust Deed would not

be released unless Plaintiff made a single payment in the amount of $20,000.00 against principal."

Plaintiff, meanwhile, argues that "assigning a single definition to the indefinite article is a mistake," and she offers competing definitions of the word "a" from other dictionaries. Plaintiff further argues that, in the context of a loan agreement, to read the word "a" as requiring a single, lump sum payment of $20,000 "defies any financial sense," yields an "illogical" result, and "cannot be sustained unless it is divorced from the context of the parties' understanding of the agreement, industry practice, and common experience * * *." In plaintiff's view, "[t]here is sufficient ambiguity in the language of the collateral release provision to render it unclear as to whether it means a single payment of twenty thousand dollars *or payment amounting to twenty thousand dollars of the principal*." (Emphasis added.)

The parties' extensive discussion of the meaning of "a" is not particularly helpful, in that it focuses on the indefinite article in isolation. In interpreting a contract, context is important. The indefinite article "a" must be read in the context of the noun that it precedes and the phrase in which it appears. In this instance, the more critical word is "payment."[3] The term appears throughout the loan agreement but is never defined. In ordinary use, the term has two possible meanings: "**1** : the act of paying or giving compensation : the discharge of a debt or an obligation" or "**2** : something that is paid : something given to discharge a debt or obligation or to fulfill a promise." *Webster's Third New Int'l Dictionary* 1659 (unabridged ed 2002). That is, in the context of a debt, "payment" can refer either to the *act of discharging the debt* or to the thing that is given to discharge the debt.

---

[3] Neither plaintiff nor defendant focused on or expressly argued about the meaning of the word "payment" in the trial court or in their briefs on appeal. Plaintiff's arguments about the language of the collateral release provision have been directed more generally at the ambiguity inherent in the phrase "a payment of principal in the amount of $20,000.00." During oral argument, the court questioned the parties regarding the word "payment" in particular, and whether that word itself is necessarily singular—an implicit premise of defendant's interpretation of the provision. As part of our role in interpreting the phrase "a payment of principal in the amount of $20,000.00"—which is the issue that plaintiff preserved below and frames on appeal—we must necessarily consider the meaning of each of the words in that phrase.

Those two possible meanings yield, at the very least, an ambiguity as to the meaning of the phrase "upon a payment of principal in the amount of $20,000.00." Defendant's argument presumes the second of the two dictionary definitions—*i.e.*, "payment" refers to a particular thing that is paid to discharge a debt, and the article "a" makes clear that such a thing is singular. However, if the first of the two dictionary definitions of "payment" is employed, another plausible reading of the agreement is manifest: That the phrase "upon a payment of principal in the amount of $20,000.00" means upon *a discharge* of the principal in the amount of $20,000.00. In that sense, "a payment of principal" occurs once the borrower has paid $20,000 in principal, regardless of the number of particular payments made to accomplish that discharge.

That latter reading is not only supported by the text of the collateral release provision in particular, but by the loan agreement as a whole and the circumstances of the parties' transaction. There may be some commercial purpose to requiring a single payment in the amount of exactly $20,000 before releasing collateral under the loan, but it is not readily apparent what that would be. The promissory note contemplated "59 regular payments of $702.65 each and one irregular last payment estimated at $33,202.86"; in other words, neither the note nor the agreement refers to a particular, single $20,000 payment of principal. Moreover, defendant, at oral argument, conceded that even a check in the amount of $20,000.01 would not result in the release of the trust deed under defendant's interpretation of the collateral release provision, because the check would not constitute a single payment in the amount of $20,000.00. Again, if the parties intended that seemingly absurd result, it is not apparent from the text or context of the loan agreement, or from the circumstances of the transaction.

In sum, plaintiff's interpretation of the collateral release provision of the loan agreement—that payment amounting to $20,000 triggers the release of the trust deed—is plausible based on its text and context within the loan agreement as a whole, and the circumstances of the parties' transaction. We therefore reverse the general judgment as to plaintiff's claims and defendant's counterclaims involving

the validity of the lien created by the trust deed, and remand for further proceedings.[4]

Reversed and remanded as to claims and counterclaims involving the validity of the lien created by the trust deed; otherwise affirmed.

---

[4] The general judgment also resolved defendant's counterclaims for an action on the note and to foreclose on security interests in plaintiff's personal property. Our decision does not disturb the trial court's judgment as to those counterclaims.